## T. D. LIPSCOMB v. W. H. FUQUA ET AL.

### No. 2095. Decided November 23, 1910.

#### 1.—Contract—Conveyance—Executed or Executory—Rescission.

An agreement, in relation to lands which recited that the seller "has bargained and sold to the buyer" the lands described, but qualified this language by provisions for a deposit of part of the consideration and for the sale of the land in parcels by the latter and deposit of the proceeds till the purchase price was paid, which was to be within a time limited, and for forfeiture of the deposit on failure to so meet the entire payment in the time provided, considered and held to create an executory and not an executed contract of sale, which the seller might rescind on default in performance by the buyer, in the absence of circumstances rendering such action inequitable. (Pp. 587–590.)

#### 2.—Same—Rescission—Equities—Pleading.

The vendee, in an executory contract who has failed to perform his undertaking to pay for land can maintain action against the seller for wrongful rescission only on allegation of facts showing such rescission to be inequitable. Petition considered and held not to show such facts. (P. 590.)

#### 3.—Same—Return of Purchase Money.

A provision, in an executory contract for sale of land that the purchaser shall forfeit the part consideration paid on his noncompliance with the terms of payment, considered and held not unreasonable as an agreed estimate of the uncertain damages for default, under which the vendor, rescinding for noncompliance, was not bound to return such purchase money. (Pp. 590, 591.)

Error to the Court of Civil Appeals, Second District, in an appeal from Sherman County.

Lipscomb sued Fuqua and another and obtained writ of error on the affirmance, upon his appeal, of a judgment for defendants.

*John W. Veale, J. W. Crudgington, R. R. Hazelwood,* and *Spence, Knight, Baker & Thomas,* for plaintiff in error.—The instrument set forth in plaintiff's petition conveyed to him the twenty-four sections of land described therein, subject only to an implied vendor's lien to secure the balance of unpaid purchase money due the defendant, Fuqua, under the terms of said conveyance. Ransom v. Brown, 63 Texas, 188; Baker v. Compton, 52 Texas, 252; Rindge v. Oliphint, 62 Texas, 682; Branch v. Taylor, 40 Texas Civ. App., 248; Bynum v. Preston, 69 Texas, 287; Harris v. Greenleaf, 79 S. W., 267; Proetzel v. Rabel, 21 Texas Civ. App., 559.

No express lien is retained in the conveyance from Fuqua to appellant to secure the unpaid purchase money, and upon appellant's failure to pay all the purchase money when due, Fuqua's only remedy was by suit to foreclose his implied vendor's lien; and he had no right to rescind the sale and sue for the land or disaffirm the sale and take possession of the land. Same authorities. Also, Pires v. Snodgrass, 91 Texas, 105.

When defendants took possession of the twenty-four sections of land, and began to exercise acts of ownership over it, without appellant's consent, they became trustees, in possession of the land, for the benefit of appellant, and he is entitled to judgment against them for all sums realized by them from sales of said land, after applying enough of the proceeds of such sales to fully pay the balance of purchase money due, with interest and costs and all reasonable expense, if any, in making such sales. Boothe v. Fiest, 80 Texas, 141; Mixon v. Miles, 92 Texas, 318; Silliman v. Gano, 90 Texas, 637; Phillips v. Herndon, 78 Texas, 378.

Any instrument in writing, signed by the grantor, showing an intention to thereby convey land to another, is sufficient to pass the vendor's title, whether the instrument contains all the formal parts of a deed or not. Dial v. Crain, 10 Texas, 444; Threadgill v. Bickerstaff, 7 Texas Civ. App., 406; Erwin v. Daniels, 34 Texas Civ. App., 378, Harlowe v. Hudgins, 84 Texas, 107.

By the terms of the instrument under consideration, the superior title passed to the appellant, and Fuqua can reinvest himself with the title only by a decree of foreclosure of his vendor's lien and sale thereunder, or by a written conveyance from appellant, of equal dignity with that by which he divested himself of his title. Sanborn v. Murphy, 86 Texas, 437; Sanborn v. Murphy, 25 S. W., 459; Clitus v. Langford, 24 S. W., 325; Erwin v. Daniel, 34 Texas Civ. App., 378.

By the terms of the conveyance set forth in the record the legal title to the land passed to appellant, and Fuqua, having only reserved the right to claim a forfeiture of $10,000 for appellant's failure to pay all the purchase money when due; and having exercised his privilege of claiming a forfeiture of the $10,000 for such failure,

will, in equity be estopped to re-enter, take possession of the land and also claim a forfeiture of all of appellant's interest therein.   Huffman v. Mulkey, 78 Texas, 557; Tom v. Wollhoefer, 61 Texas, 277; Moore v. Giesecke, 76 Texas, 543; Hamblen v. Foltz, 70 Texas, 132.

*Madden & Truelove and W. D. Wilson,* for defendants in error.— Time may be made the essence of a contract to convey land by express stipulation.   No particular form of stipulation is necessary, but any clause will have that effect if it clearly appears that time of performance was to be essential.   Edwards v. Atkinson, 14 Texas, 377; Pomeroy, Spec. Per., secs. 389-390 and note.

Time may, from the nature of the property, or surrounding circumstances, such as the constantly rising value of the land, become of the essence of the contract without express stipulation to that effect.   Edwards v. Atkinson, 14 Texas, 377; Scarborough v. Arrant, 25 Texas, 136; Campbell v. McFadden, 9 Texas Civ. App., 379; Taylor v. Longworth, 14 Pet., 174; Garretson v. Vanloon, 54 Am. Dec., 492; Green v. Covillared, 70 Am. Dec., 729.

Mr. Justice Brown delivered the opinion of the court.

T. D. Lipscomb instituted this suit in the District Court of Sherman County against W. H. Fuqua and L. M. Price, alleging in his petition, in substance, that on the 3rd day of January, 1906, defendant Fuqua owned and was in possession of 24 sections of land located in Sherman County and described in the petition, the description of the land being unimportant in this controversy.   L. M. Price was made a party to the proceeding, but the allegations of the petition do not disclose his connection with the case except as an agent of Fuqua in making the contract.

The petition charges that on the date named Fuqua made and delivered to the plaintiff the following instrument of conveyance to the said 24 sections of land:

"*Contract of Sale of Real Estate.*—This contract made and entered into this the 3rd day of January, 1906, by and between W. H. Fuqua by his agent L. M. Price of the County of Potter, State of Texas, the seller, and T. D. Lipscomb, of the County of Sherman, State of Texas, the buyer.   Witnesseth, the seller has bargained and sold to the buyer the following described real estate situated in the County of Sherman, State of Texas, to wit: Section 15, 17, 19, 21, 23, 25, 27, 29, 31, 33, 35, 37, 39, 41, 43, 45, 47, 49, 51, 53, 55, 57, 59, 61, Block 2B, G. H. & H. Ry. Co., in Sherman County, at and the price and sum of $63,744 (Sixty-three Thousand Seven Hundred and Forty-four Dollars) to be paid as follows: $5,000 at the signing of this contract, which is deposited with the Stratford Merc. Co. as a part of the consideration of the sale and the balance whereof is payable in the following manner, to wit: $5,000 (Five Thousand Dollars) on Jan. 10, 1906, and the balance $53,744 (Fifty-three Thousand, Seven Hundred and Forty-four Dollars) on or before April 3, 1906.

"It is further agreed that the said T. D. Lipscomb has the

right to sell this land section at a time or any amount; the said T. D. Lipscomb agrees that in selling this land he will turn all the money received from the sales of any of this land into the said W. H. Fuqua until the full amount of $63,744 (Sixty-three Thousand Seven Hundred and Forty-four Dollars) has been paid.

"The said T. D. Lipscomb agrees not to sell the four sections nearest to Stratford, of this twenty-four, for a less sum than six dollars per acre, and the next nearest four for a sum not less than five fifty an acre, and the next nearest four at a sum not less than five dollars an acre and the remainder not to be sold for a less sum than four fifty an acre, all of which, the said Lipscomb agrees to pay the said W. H. Fuqua. It is agreed that in the event the said T. D. Lipscomb fails or refuses to pay all of the $63,744 on or before April 3, 1906, the five thousand now paid and the five thousand to be paid on January 10, 1906, shall be forfeited to the said W. H. Fuqua, the seller. Also, any failure on the part of the said T. D. Lipscomb to turn in promptly any amounts realized from sales, shall forfeit the amounts already paid and render this contract null and void.

"Signed      W. H. FUQUA,
By his agent, L. M. PRICE,
Party of the First Part.
"Signed      T. D. LIPSCOMB,
Party of the Second Part."

The petition alleges that subsequent to and directly following the execution of the said writing the plaintiff took possession of the land and held the exclusive possession thereof until May 1, 1906, when Fuqua and Price forcibly and without the consent of the plaintiff evicted him from the possession of the land and took actual possession thereof. It is alleged that the said Fuqua has sold and conveyed to other persons not known to the plaintiff a large number of sections of the said land and has appropriated the proceeds to his own use; that the plaintiff made the first two payments stated in the contract, of $5,000 each, but failed to make the third payment on the 3rd day of April, 1906, that is, the sum of $53,744. It is alleged in the petition that the defendants, Fuqua and Price, have sold to parties not known to the plaintiff $80,000 worth of the land and have appropriated the proceeds to their own use and that the said defendants still have in their possession the remainder of the land which is unsold.

The petition prays that the defendants be declared to be trustees for the benefit of the plaintiff and that the plaintiff be adjudged to recover all of the money received by the said Fuqua and Price over and above that which is necessary to pay the balance of the purchase money of the land.

There is also in the petition a prayer that the plaintiff be adjudged to recover the $10,000 forfeit, which was put up and paid to the said Fuqua, in case it shall be held that he is not entitled to the relief otherwise prayed for.

The defendant interposed a general demurrer to the petition

which was sustained by the court and the plaintiff's petition dismissed from which judgment of the trial court the plaintiff appealed to the Court of Civil Appeals, which affirmed the judgment.

Counsel for plaintiff in error contend with much earnestness and ability that the instrument executed by the parties to this suit and which is copied herein was an executed contract by which the title to the lands mentioned therein was vested in the plaintiff in error, therefore, it is contended that Fuqua had not the right of rescission under that contract. The contention is based mainly upon the use in the contract of the words, "bargained and sold," also the designation of the parties as "seller" and "buyer." If the words quoted above were in no way qualified or explained in the terms of the writing, they might be held to have the effect claimed, but the use of them is not such as to control the construction of the contract which contains other language that would lead to a different conclusion. We must look to all parts of the contract and the surrounding circumstances to ascertain the intention of the parties in making the writing.

In Secrest v. Jones, 21 Texas, 122, the court had under consideration an instrument which contained this language:

"In the jurisdiction of Austin, on the 24th day of April, 1834, before me, R. M. Williamson, only Alcalde of said Jurisdiction, and the witness named at the end, came and appeared the citizen James Wright, a resident of said Municipality, whom I know and to whose act I gave faith, who declared that Daniel T. Fitchett, also a resident of said jurisdiction, having this day executed to him, said James Wright, his several promissory notes, bearing even tenor and date herewith, to wit: One for fifty dollars, payable on the first day of May next, and one for one hundred and fifty dollars, payable on the first day of January next, the said James Wright has sold unto said Daniel T. Fitchett, a tract or parcel of land situated as follows:" . . . "And it being inconvenient to have the titles to said land made at this time, the said Wright binds and obligates himself, his person and property, to the said Fitchett, to make, or cause to be made, to him, his heirs or assigns, a full and complete transfer or deed to said tract of land before described, within three months from this date; and in the meantime he invests said Fitchett with full, ample and peaceable possession of said parcel of land, that he may freely use and enjoy the same, build houses, cut timber and open fields upon the same as if it were his own acquired by just and legitimate title." The court held in that case that the instrument under consideration was an executory contract for the sale of land.

In the case before us the instrument shows that the buyer had not done all that was required of him by the terms of his agreement, but in fact the principal thing to be accomplished was the sale of the land in the future. This service was specially undertaken by Lipscomb and had the effect to make the instrument executory in its character. Wallace v. Wilcox, 27 Texas, 67. In the case cited the instrument used these words: "I do by these presents bargain and sell." The buyer was to pay dues to the government, and the

court said: "We think the court below did not err in treating the instrument executed by Jordan in favor of Jeremiah Strode, on the 4th day of February, A. D. 1835, as a bond for title, and not as an absolute conveyance. The instrument in question is substantially the same as the one which was construed by this court in the case of Secrest v. Jones, 21 Texas, 121. It showed that something remained to be done by Strode, and that a further assurance of title was contemplated by the parties."

Looking to the whole contract and the surrounding circumstances as they appeared from the allegations of the petition, we conclude that it was the joint purpose of Fuqua and Lipscomb to convert the lands described in the contract into money, whereby Fuqua would receive as much as $63,744 in payment for the land and Lipscomb would reap the benefit·of the surplus of the sum realized over and above that to be paid to Fuqua. In other words, it was an executory contract of sale, to be consummated by the performance on Lipscomb's part by making the sale and paying over the money to Fuqua. This he had not done within the time specified in the contract, nor up to the time that Fuqua declared a rescission of the contract and took possession of the land. Unless there was some circumstance which would render it inequitable for this rescission to occur, by which Lipscomb would suffer damages, Fuqua had the right, upon the failure of Lipscomb to perform his part of the contract to rescind the sale and retake the land. Kennedy v. Embry, 72 Texas, 387.

Did Fuqua have the right under the circumstances to rescind the contract and resume his possession of the land? is the next and the important question in the case. We must look alone to the allegations of the petition for the facts upon which to base our conclusion. If there were circumstances which forbade the rescission by Fuqua, then it was necessary for the plaintiff in this action to set up those circumstances, and, unless he has so shown by the allegations of his petition, we must assume that no such existed. Under the allegations of the petition we must conclude that Lipscomb had done no act in an effort to sell the land, because none is alleged. For the same reason it would appear that he had incurred no expense in such effort to sell and therefore there had not grown up any condition from which he could expect to reap a benefit by the continuance of the contract beyond the time fixed for payment. It is not alleged that he had any expectation of being able to sell the land according to the terms of the contract. In fact the whole ground is covered by the statement that the payment of the $10,000, part of the purchase price of the land, is the single fact upon which any reliance can be placed for a claim that the rescission was not proper and lawful.

Whether the vendor who rescinds an executory contract for the sale of land shall return the purchase money paid depends upon the equities of each case. If it would be inequitable for such rescission to occur without restoration of money paid, then it must be restored. No equities are shown by the allegations of the petition, but it does appear that the damages which Fuqua might suffer by a breach of the contract were very uncertain and it is not made to appear that

$10,000 was unreasonable as an estimate by the parties of such damages, therefore, courts will assume that the amount agreed upon was intended to compensate Fuqua for the loss he might sustain from a breach of the contract. Bessling v. Hoyle, 1 Ct. of App. Cases, para. 288; Durst v. Swift, 11 Texas, 273; Yetter v. Hudson, 57 Texas, 604.

We conclude that the facts alleged in plaintiff's petition showed no right of action against Fuqua, therefore, the demurrer was properly sustained and the judgment is affirmed.

*Affirmed.*