DANNEL v. SHERMAN TRANSFER CO.
(No. 8238.)

(Court of Civil Appeals of Texas. Dallas. March 15, 1919. Rehearing Denied April 26, 1919.)

1. .MONOPOLIES ⊚⟶12(2) — COMBINATIONS PROHIBITED—PURPOSE—APPLICATION.

The "combination of capital, skill or acts by two or more persons," etc., contemplated by Vernon's Sayles' Ann. Civ. St. 1914, arts. 7796--7798, relating to combines, must be in relation to articles or commodities of merchandise, produce, or commerce, or where they are in any manner affected or. controlled.

2. MONOPOLIES ⊚⟶12(4)—CONTRACTS IN RESTRAINT OF TRADE—SALES OF BUSINESS.

Vernon's Sayles' Ann. Civ. St. 1914, arts. 7796–7798, does not prohibit sale of business and agreement to abstain from engaging in that business for certain period of time, and obligating the seller to use his influence in aiding the purchaser.

3. MONOPOLIES ⊚⟶12(4)—SALE OF BUSINESS —AGREEMENT NOT TO COMPETE.

A contract whereby one of two persons or companies engaged in the funeral business sells to the other an auto hearse, and agrees not to buy another hearse, and to use only the hearse sold for a period of five years at a reasonable rental, did not violate Vernon's Sayles' Ann. Civ. St. 1914, arts. 7796–7798, relating to trusts and combines, amounting to no more than the sale of one business with an agreement on the part of seller not to engage in such business.

4. MONOPOLIES ⊚⟶12(1)—CONTRACTS IN RESTRAINT OF TRADE—CONSTRUCTION.

Contracts falling within the general designation of contracts in restraint of trade are to be construed with the intent of arriving at the fair meaning of the parties, and for that reason, where their provisions are susceptible of two constructions, the court will examine the entire instrument, consider the subject-matter, the motives that led to it, the circumstances surrounding its execution and object intended to be effected, and where one construction would render the contract illegal, and the other would make it lawful, that construction which would conform the contract to the law must be adopted.

5. .CONTRACTS ⊚⟶153 — CONSTRUCTION — LEGALITY.

Where a contract is susceptible of two constructions, one which would render the contract illegal and one which would make it lawful, that construction which would conform the contract to the law must be adopted.

Appeal from District Court, Grayson County; Silas Hare, Judge.

Suit by the Sherman Transfer Company against John C. Dannel. From a judgment in favor of plaintiff, defendant appeals. Affirmed.

B. F. Gafford, of Sherman, for appellant. Head, Dillard, Smith, Maxey & Head, of Sherman, for appellee.

RAINEY, C. J. Appellee, a corporation, sued appellant to restrain him from the violation of a contract not to buy or use a certain auto hearse, alleging that appellant, known as party of the first part, Haynes & Sporrer, known as party of the second part, and appellee, known as party of the third part, entered into the following agreement: That in consideration of the sum of $3,267, part in notes and $1,742 in cash, paid to appellant for an automobile hearse, "purchased by the party of the third part from the party of the first part on this date, and for other valuable considerations, the party of the first part hereby agrees that for a period of five years from this date that he will neither buy, rent, nor borrow an automobile hearse from any one whomsoever, except the party of the third part, so long as the party of the third part shall own and maintain automobile funeral service for hire, unless it should be with the full consent of the party of the third part. The party of the second part joins said agreement under the same conditions as the parties of the first and third part." A temporary injunction was issued and levied on one automobile hearse purchased by defendant.

The appellant filed an answer in substance that he had heard that appellee had threatened that he was going to raise the price for the use of said hearse and that appellant would not stand for it; that said petition was based upon the said contract, which was in violation of articles 7796–7798, Vernon's Sayles' Texas Civil Statutes 1914, and forms and creates a trust and a combine, in that a combination of two firms and a combination of their capital, skill, and acts has been formed to create and which tends to carry out a restriction in trade and commerce; "that it creates and carries out a restriction in the free pursuit of a lawful business and lawful businesses, to wit, two undertaking establishments and the livery and transfer business in this community; that it is an agreement to fix prices of merchandise; that it lessens competition in aid to commerce; that it combines and. unites an interest they have in connection with a charge for transportation whereby its price and charge is affected; that said contract is an agreement and an understanding to refuse to buy, rent, or borrow from

any other person or firm, corporation, or association of persons any articles of merchandise or commodity."

An appeal was taken from the granting of said injunction.

The parties to the agreement herein were engaged in the undertakers' business, and in addition thereto appellee was in the livery business, and after said agreement all of said parties continued in said respective businesses, which were separate and independent until Dannel bought the automobile hearse and elected to operate it, when this injunction was issued. In addition to the part of the agreement heretofore shown, the agreement further recites that:

"Both parties of the first and second parts hereby agree to give to the party of the third part their entire funeral business; in other words, the parties of the first and second parts will engage from the party of the third part all automobile hearses and all other service in connection therewith necessary for the proper handling of such funerals as they may have from time to time, as well as all equipment in connection with horse-drawn funerals, except such hearses, dead wagons, etc., as the parties of the first and second parts now own. It is understood that the parties of the first and second parts will at all times order from the party of the third part all such equipment as is needed or that is necessary for the proper handling of funerals, and that the parties of the first and second parts will make proper charges on their books for all service rendered, and make collection of the accounts in the same manner as they do their own accounts; for this service the party of the third part agrees to pay to each the party of the first and party of the second part 10 per cent. of all collections so made.

"It is further understood that the charges for service rendered by the third party will at all times be reasonable for the particular kind of service rendered, and that they will be reasonably in line with charges for similar service through this section of the country when under normal conditions. It is further understood that while the party of the third part shall only own one automobile hearse, and will serve both parties of the first and second part with the same hearse, that in the event each undertaker should have a funeral for approximately the same time, the time of death will determine the question as to whom the automobile hearse first belongs; the hearse going to the party who died first, unless mutually agreed otherwise between the first and second parties hereto.

"It is understood and agreed that the party of the third part will from time to time furnish to the parties of the first and second parts a schedule of charges in connection with both motor and horse drawn service; this schedule to include both city and country service. The purpose of this schedule is to prevent errors or confusion on the part of the parties of the first and second part in quoting prices on the equipment to be furnished by the party of the third part.

"It is understood and agreed by and between all the parties hereto that, should any one or more of them either sell, trade, or lease or otherwise dispose of their business during the life of this agreement, this agreement will be binding upon their successors or assigns in the same manner as it is binding upon the originals, and the parties hereto agree that in any transfer of interests to other parties that this agreement is to have the assent of the party or parties to whom such transfer may be made."

[1] Appellant contends:

"That said contract is in violation of the provisions of our anti-trust statutes (articles 7796 and 7798, Revised Statutes 1914, Vernon's Sayles' Civil Stats.), and creates a 'trust' and a combine, in that a combination of two firms and corporations of their capital, skill, and acts has been formed to create, and which tends to create and carry out, a violation in trade and commerce; that it creates and carries out a restriction in the free pursuit of a lawful business."

The statute defines a "trust" to be "a combination of capital, skill or acts by two or more persons, firms, corporations or associations of persons or either two or more of them for either, any or all of the following purposes," naming seven different ways how it can be formed. The "combination of capital, skill or acts by two or more persons," etc., contemplated by the statutes, must be in relation to articles or commodities of merchandise, produce, or commerce, or where they are in any manner affected or controlled.

[2, 3] Neither of the parties to the contract was engaged in the business of selling any commodity of merchandise, produce, or commerce. There was no combination between them of any capital, no skill or acts were united, but after the trade was made all continued in their separate and distinct businesses. There was one isolated automobile hearse sold to one of the parties, and surely the statute did not intend to embrace within its terms such a transaction. This hearse was sold by the party of the first part to the party of the third part, and the party of the first part agreed not to buy, rent, or borrow another hearse from any one other than the party of the third part. This within itself was not unlawful, because a man has a right to sell out his business to another and agree to abstain from engaging in that business again for a certain period of time and obligate himself to use his influence in aiding the purchaser. Gates v. Hooper, 90 Tex. 563, 39 S. W. 1079; Norton v. Thomas, 99 Tex. 578, 91 S. W. 780.

When it is lawful under the statutes for one to sell to another his stock of goods, and agree to stay out of business for a certain period, and throw his influence to the purchaser, we can see no objection in this case for the party of the first part and party of the second part agreeing to engage the services of the party of the third part in their funeral business. There was nothing to sell or buy, except the one automobile hearse, and the other part of the agreement was

for services to be rendered, and as we understand such an agreement is not in violation of the statute. Photographic Co. v. Grocery Co., 108 S. W. 768.

Appellant's contention is that the term "buy," used in the contract, is conclusive of the meaning of it, and shows that it was intended in restraint of trade. "The intent of the parties, taking the contract as a whole, must govern in arriving at a proper construction thereof." Lipscomb v. Fuqua, 103 Tex. 589, 131 S. W. 1061. Construing this contract as a whole, there seems to be only one object in view; that is, the sale of one business, with an agreement on the part of the seller not to engage in such business, and use his influence and good will in behalf of the purchaser for five years.

[4, 5] If the contract should appear in any part to be construed to be in restraint of trade, and a construction thereof shows a different meaning, that construction showing a valid object is to govern. As said in 13 Corpus Juris, p. 555, § 520:

"Contracts falling within the general designation of contracts in restraint of trade are to be construed, as is the case with other contracts, with the intent of arriving at the fair meaning of the parties, and for this reason, where their provisions are susceptible of two constructions, the court will examine the entire instrument, consider its subject-matter, the motives that led to it, the circumstances surrounding its execution, and the object intended to be effected."

Also:

"It is a well-established rule of construction that language in a contract which is susceptible of two constructions, one which would render the contract illegal and the other would make it lawful, that construction which would conform the contract to the law must be adopted." Clark on Contracts, p. 593; Evans v. Pike, 118 U. S. 241, 6 Sup. Ct. 1090, 30 L. Ed. 234; Hobbs v. McLean, 117 U. S. 567, 6 Sup. Ct. 870, 29 L. Ed. 940; Foard County v. Sandifer, 105 Tex. 420, 151 S. W. 523.

We consider that the contract here in controversy in no way contravenes articles 7796–7798, and therefore we hold it is valid, and affirm the judgment granting the injunction in favor of appellee.

Affirmed.