T. D. LIPSCOMB v. W. H. FUQUA ET AL.

Decided May 1, 1909.

**1.—Realty—Contract of Sale—Rescission.**

Contract for sale of land considered, and held, when read as a whole, to evidence the intention of both parties that the superior title to the land should remain in the vendor until full performance by the vendee, and therefore the vendor had the right to rescind the contract and repossess himself of the land upon failure by the vendee to comply with the terms of the contract.

**2.—Same.**

The express reservation of a vendor's lien is not the only way by which the vendor may evidence his intention to retain the superior title. It is sufficient if such intention can be gathered from all the parts of the contract.

Appeal from the District Court of Sherman County. Tried below before Hon. J. N. Browning.

*John W. Veale, J. W. Crudgington* and *R. R. Hazelwood,* for appellant.—The conveyance set forth in plaintiff's petition conveyed to him the twenty-four sections of land described therein, subject only to an implied vendor's lien to secure the balance of unpaid purchase money due the defendant, Fuqua, under the terms of said conveyance. Ransom v. Brown, 63 Texas, 188; Baker v. Compton, 52 Texas, 252; Rindge v. Oliphant, 62 Texas, 682; Branch v. Taylor, 89 S. W., 813; Bynum v. Preston, 69 Texas, 287; Harris v. Greenleaf, 79 S. W., 267; Proetzel v. Rabel, 54 S. W., 373.

No express lien is retained in the conveyance from Fuqua to appellant to secure the unpaid purchase money, and upon appellant's failure to pay all the purchase money when due, Fuqua's only remedy was by suit to foreclose his implied vendor's lien; and he had no right to rescind the sale and sue for the land or disaffirm the sale and take possession of the land. Same authorities; also Pires v. Snodgrass, 91 Texas, 105.

Any instrument in writing signed by the grantor showing an intention to thereby convey land to another, is sufficient to pass the vendor's title, whether the instrument contains all the formal parts of a deed or not. Dial v. Crain, 10 Texas, 444; Threadgill v. Bickerstaff, 26 S. W., 739; Erwin v. Daniels, 79 S. W., 61; Harlowe v. Hudgins, 84 Texas, 107.

*Madden & Trulove* and *W. D. Wilson,* for appellees.

SPEER, ASSOCIATE JUSTICE.—Appellant and appellee Fuqua, on January 3, 1906, entered into the following agreement:

"CONTRACT OF SALE OF REAL ESTATE.

"This contract made and entered into this the 3d day of January, 1906, by and between W. H. Fuqua, by his agent L. M. Price, of the county of Potter, State of Texas, the seller, and T. D. Lipscomb of the county of Sherman, State of Texas, the buyer,

"Witnesseth: The seller has bargained and sold to the buyer the following described real estate situated in the county of Sherman, State of Texas, to wit: Sections 15, 17, 19, 21, 23, 25, 27, 29, 31, 33, 35, 37, 39, 41, 43, 45, 47, 49, 51, 53, 55, 57, 59, 61, block 2, B. G. H. R. R. Co., in Sherman County, at and for the price and sum of $63,744 (sixty-three thousand seven hundred and forty-four dollars), to be paid as follows: $5,000 at the signing of this contract, which is deposited with the Stratford Mer. Co., as a part of the consideration of the sale, and the balance whereof is payable in the following manner, to wit: $5,000 (five thousand dollars) on January 10, 1906, and the balance, $53,744 (fifty-three thousand seven hundred and forty-four dollars), on or before April 3, 1906.

"It is further agreed that the said T. D. Lipscomb has the right to sell this land, section at a time, or any amount; the said T. D. Lipscomb agrees that in selling this land he will turn all the money received from the sales of any of this land in to the said W. H. Fuqua until the full amount of $63,744 (sixty-three thousand seven hundred and forty-four dollars) has been paid.

"The said T. D. Lipscomb agrees not to sell the four sections nearest to Stratford of this twenty-four for a less sum than six dollars an acre, and the next nearest four for a sum not less than five-fifty an acre, and the next nearest four at a sum not less than five dollars an acre, and the remainder not to be sold for a less sum than four-fifty an acre, all of which the said Lipscomb agrees to pay to the said W. H. Fuqua. It is agreed that in the event the said T. D. Lipscomb fails or refuses to pay all of the $63,744 on or before April 3, 1906, the five thousand now paid and the five thousand to be paid on January 10, 1906, shall be forfeited to the said W. H. Fuqua, the seller. Also, any failure on the part of the said T. D. Lipscomb to turn in promptly any amounts realized from sales, shall forfeit the amounts already paid and render this contract null and void.

"(Signed)      W. H. Fuqua, by his agent L. M. Price,
"Party of the first part.
"(Signed)                          T. D. Lipscomb,
Party of the second part."

On October 21, 1908, appellant filed his first amended original petition complaining of appellee and L. M. Price, alleging in substance that, though he had paid the two first payments of five thousand dollars each, according to the terms of the foregoing contract, but was in default as to the fifty-three thousand seven hundred and forty-four dollars to be paid on or before April 3, 1906, and though he had gone into the possession of said property and exercised the exclusive ownership over the same, nevertheless the defendants did about May 1, 1906, wrongfully eject him therefrom and appropriate the same to their own use, selling much of the land for a large sum of money. He prayed for an accounting, offering to do full equity, and asked for judgment for the title and possession of that portion of the lands remaining unsold, and for the value of those portions which had been sold by defendants, less the amount of his indebtedness to the said Fuqua.

To this petition the defendants interposed a general demurrer, which the court sustained, and from this ruling the appeal is prosecuted.

The contention of appellant is that the instrument of writing above set forth conveyed to him the twenty-four sections of land described therein, subject only to an implied vendor's lien to secure the balance of unpaid purchase money due the appellee Fuqua under the terms of said instrument. If this contention is sound, then there can be no question under the authorities but that appellee Fuqua would be denied the remedy of rescission accorded by law to the vendor of real property by an executory contract expressly reserving the vendor's lien. See Ransom v. Brown, 63 Texas, 188; Baker v. Compton, 52 Texas, 252; Rindge v. Oliphant, 62 Texas, 682; Branch v. Taylor, 40 Texas Civ. App., 248. But we are of opinion that the instrument is not to be construed as vesting the absolute title to the land in appellant with an implied lien only for the unpaid purchase money, but, on the contrary, we think the instrument, when read as a whole, clearly evidences the intention of both parties that the superior title to the land should remain in Fuqua until full performance on the part of appellant. True, in the first paragraph of the instrument, which the parties themselves denominate "Contract of Sale," it is declared that appellee, "the seller has bargained and sold to the buyer," appellant, the real estate in controversy, but in the next paragraph it is expressly stipulated that appellant "has the right to sell this land, section at a time, or any amount," and in making such sales the appellant is limited as to price, and furthermore, required to turn over all the proceeds of such sales to appellee. If the parties to this undertaking had intended thereby to vest title to the property in appellant the instrument of conveyance would hardly have contained a stipulation of this kind, since it would have been altogether a useless provision.

But that the intention of the parties was that the superior title should remain in appellee until full performance by appellant is quite apparent from the further stipulation, "that in the event the said T. D. Lipscomb fails or refuses to pay all of the $63,744 on or before April 3, 1906, the five thousand now paid and the five thousand to be paid on January 10, 1906, shall be forfeited to the said W. H. Fuqua, the seller." Now, these payments would not be forfeited, in the common acceptation of that term, if, notwithstanding appellant's default, he yet could hold the land by paying the balance of the purchase price, or any other amount. The proposition now asserted by appellant, that the effect of this provision was only to require him to again pay to appellee the ten thousand dollars, is a strained construction of the contract, and one doubtless which never entered the mind of either party at the time of its consummation. Ordinarily, an agreement that the purchaser, in the event of his default in subsequent payments, should forfeit the amount already paid on a contract for the purchase of land, could mean nothing else than that such purchaser would lose the amount of money thus paid, and that the seller should retain the land. We think this is the meaning of the present instrument, and upon appellant's default appellee had the right, which he exercised, to repossess himself of the land and to convey the same to another, pre-

cisely as though he had expressly retained the vendor's lien in the contract of conveyance. The express reservation of a lien is not the only way by which the vendor may evidence his intention to retain the superior title. Such intention should be given effect where it can be gathered from the language used, and the paragraphs above referred to are indicative of such intention. Besides, it is worthy of notice that the instrument is not acknowledged in a manner to authorize its registration, which is another circumstance tending strongly to show that the parties did not understand it to be a completed conveyance.

We find no error in the judgment and it is affirmed.

*Affirmed.*

Writ of error granted, affirmed, 103 Texas, ——.